In the Interest of J. A. K., a Child, Appellant.

No. 1850.

Court of Appeals of Texas, Corpus Christi.

Oct. 30, 1981.

Rehearing Denied Nov. 19, 1981.

Wilson J. Seldon, Jr., Brownsville, for appellant.

Robert A. Whittington, O'Leary, Sanchez & Benton, Brownsville, for appellee.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

OPINION

NYE, Chief Justice.

This is an appeal from a take-nothing judgment of the 138th District Court, Cameron County, Texas, in a paternity suit. For clarity, the parties will be referred to as they were in the trial court.

Petitioner is the mother of the child, J.A.K., who was born out of wedlock on April 2, 1980. Soon thereafter, the mother brought an action under the Texas Family Code, (§ 13.01), alleging that the respondent was the biological father of the child and seeking to establish the parent-child relationship between respondent and the child. Accordingly, she prayed that the respondent be declared to be the father of the child; that she be named as managing conservator; and that respondent be compelled to pay medical expenses, child support and attorney's fees. During the pretrial portion of the trial, the court ordered blood tests which failed to show that respondent was not the father. The case proceeded to trial before the court, and it rendered judgment in favor of the respondent, holding that "the evidence does not show by *clear and convincing proof* that [Respondent] is the father of the child." (emphasis added).

The sole question on appeal is whether the trial court erred in requiring the mother to prove the paternity of her child by clear and convincing proof, rather than by a preponderance of the evidence.

So far as we can determine, this is the first time a Texas appellate court has directly addressed this question. The mother contends that the instant action is governed by that section (§ 11.15) of the Texas Family Code which states that:

"The court's findings shall be based on a preponderance of the evidence under rules generally applicable to civil cases."

Respondent contends that the trial court was correct in its holding to the effect that due process demands a higher standard of proof in spite of the statute. Respondent urges us to extend the holding of the Texas Supreme Court that § 11.15 of the Texas Family Code should not apply to proceedings involving involuntary termination of the parent-child relationship. *In the Interest of G. M.*, 596 S.W.2d 846 (Tex.1980).

However, in involuntary termination proceedings, the plaintiff is faced with the burden of overcoming the strong presumption that the interests of a child are best served by remaining with its natural parents. Quoting from *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court in *G. M.* noted, "the rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and '[r]ights far more precious ... than property rights.' ... The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." 596 S.W.2d at 846. Compare *Sanchez v. Texas Department of Human Resources*, 581 S.W.2d 260 (Tex.Civ. App.—Corpus Christi 1979, no writ). In the instant case, respondent can claim no equivalent interest or presumption to justify increasing the mother's burden of proof.

Respondent argues that the "clear and convincing" standard is appropriate because the interests at stake are more substantial than the mere loss of money. While we agree that in this lawsuit there is more at stake than a mere money judgment, we do not believe that that fact provides sufficient reason to abrogate the legislative intent set out so clearly in the statute. Clearly, substantial interests are at stake in other suits affecting the parent-child relationship, such as voluntary legitimation. Yet, in such actions, preponderance of the evidence is the recognized standard by which the best interests of the child must be shown. See *In the Interest of C. D. V.*, 589 S.W.2d 543, 547 (Tex.Civ.App.—Amarillo 1979, no writ). The court, in *In the Interest of G. M., supra*, quoted at length from *Addington v. State*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), on the functions of standards of proof. The following language was emphasized: "the standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." 99 S.Ct. at 1808.

In the present case, respondent's interest in not being saddled with the fiscal responsibilities of parenthood must be balanced against the right of the child to support and inheritance from its natural father. We cannot say that it is a violation of due

process to allocate the risk of error equally between the litigants in a paternity suit.

Respondent also claims that he has a liberty interest at stake because of the risk of civil contempt proceedings and criminal nonsupport proceedings should he fail to pay any support ordered by the court. He reasons that this risk justifies the imposition of a higher standard of proof, offering the analogy of a civil commitment proceeding, as in *State v. Addington*, 588 S.W.2d 569 (Tex.1979). We think the analogy is not relevant. Although a judicial determination of paternity and order for support are necessary prerequisites for the invocation of any sanctions for non-support of an illegitimate child, the liberty of a putative father is not in issue in a paternity suit under the Texas Family Code.

The out-of-state cases cited by respondent in support of his argument for the clear and convincing standard are all from states in which paternity proceedings are clearly labeled quasi-criminal, or in which the issue of paternity arises only in the context of criminal non-support proceedings. See e. g., *Drummond v. Dolan*, 155 A.D. 449, 140 N.Y.S. 307 (N.Y.App.Div. 1913); *Scoggins v. State*, 98 Ga.App. 360, 106 S.E.2d 39 (1958); *State v. Grace*, 286 A.2d 754 (Del.1971). Our research shows that in the majority of states, paternity suits are considered civil in nature, and the paternity of the child may be proved by a preponderance of the evidence. 10 C.J.S. *Bastards* § 95 (1938 with 1981 Cum.Supp.) See e. g., *Sims v. State*, 36 Ala.App. 349, 55 So.2d 863 (1951); *Hodge v. Gould*, 274 Cal. App.2d 806, 79 Cal.Rptr. 245 (1969); *Leach v. State*, 398 P.2d 848 (Okl.1965).

We have considered and rejected the suggestion that the mention of the clear and convincing evidence standard in Section 13.-05 indicates that the legislature meant to adopt the intermediate standard for pater-

nity actions.[1] Section 13.05 was designed to eliminate frivolous claims. See *In the Interest of B__ M__ N__*, 570 S.W.2d 493, 500 (Tex.Civ.App.—Texarkana 1978, no writ). There is no basis for inferring that the standard to be used in Section 13.05 for dismissing frivolous claims is the same standard that should be used for the proceedings that determine the ultimate findings in the trial on the merits. See Tex.Fam.Code Ann. tit. 2, §§ 11.14 and 11.15 (Vernon 1975).

Had the legislature desired that a different standard of proof apply in determining the ultimate court's findings in paternity suits under the Family Code, it could easily have so specified. Petitioner's point of error is sustained. The judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and Remanded.

---

1. Tex.Fam.Code Ann. tit. 2, § 13.05, (Vernon Supp. 1980–1981), provides:

"(a) At the conclusion of the pretrial conference, if the court finds that the tests show by clear and convincing evidence that the alleged father is not the father of the child, the court shall dismiss the suit with prejudice

(b) If the court finds that the blood tests fail to show by clear and convincing evidence the alleged father is not the father of the child, the court shall set the suit for trial."